## JONATHAN DOUGLAS v. RICHARD McFADIN.

BREACH OF CONTRACT; *Withholding Knowledge of Loathsome Disease, When a good Defense.* D. leased to M. for one year all the arable land on the farm on which D. then resided. D. on his part, was to furnish everything, and board M. for the year at his house. M. on his part, was to perform all the labor in raising the crops on said land. D. was then to have two-thirds of each crop raised on said land, and M. one-third thereof. At the time said lease was entered into, and subsequently thereto, M. was "infected with a loathsome,

contagious and infectious disease, called syphilis," which disease afterward, and at the time M. boarded at the house of D. endangered the lives and health of D. and his family, and of which disease D. was at the time he entered into said lease, ignorant. In ten days after the lease was entered into, and when D. became aware of said disease, he refused to board M. any longer at his house. M. then left the premises, and sued D. for damages, claiming (at least on the trial) as damages the value of the use of said land for one year, and the value of his board for one year. D., as a defense to said action, offered to show (both by his pleadings and evidence) that M. was affected with said disease; that he, D., was ignorant of the same at the time he entered into said lease; and that he refused to board M. at his house because of said disease, but the court excluded said defense. *Held*, That it was error to exclude such defense, and the evidence offered to support it.

### *Error from Jackson District Court.*

THE district court, at the December Term 1873, affirmed the judgment of a justice of the peace, in favor of *McFadin*, and against *Douglas*. *Douglas* brings the case here on error for review. The facts, and proceedings, are fully stated in the opinion.

*Charles Hayden*, for plaintiff.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought originally in a justice's court by McFadin against Douglas for $300 damages alleged to have resulted from the breach of certain stipulations in a lease. It appears from the record that, on August 26th 1873, defendant Douglas by a parol contract leased to plaintiff McFadin, for the term of one year, the farm upon which Douglas resided, upon the following terms, to-wit: Douglas was to furnish everything, and board McFadin at his house; McFadin was to do all the work; Douglas was to have two-thirds of each crop raised on the premises, and McFadin one-third. On September 4th and 5th Douglas told McFadin that he could not board him any longer at his house, and wanted McFadin to give up the lease, or allow some other man to fill his place. McFadin did not

agree to this; but still, on September 5th he left Douglas' house. Three days later, on September 8th, he commenced this action, and alleged among other things that Douglas refused to board him, or to allow him to work on said premises. On the 16th, the case was tried before a justice and a jury. The defendant filed a bill of particulars, denying generally the allegations of the plaintiff's bill of particulars, and also setting up as a defense to the plaintiff's action that the time said lease was entered into, and subsequently thereto, the plaintiff was "infected with a loathsome, contagious and infectious disease, to-wit, syphilis, which disease afterward, and at the time the plaintiff boarded at the defendant's house, endangered the lives and health of defendant and his family," etc., and that at the time the lease was entered into the defendant was ignorant of said disease, and that because of such disease the defendant refused to allow the plaintiff to longer board at his house. This defense was stricken out by the court, on motion of the plaintiff. On the trial the defendant tried in various ways to introduce evidence to prove these matters, but the court in every instance, on the objection of the plaintiff, excluded the evidence. And finally, at the close of the trial, the court instructed the jury "that in making up their verdict they are not to take into consideration any disease that the plaintiff may have been afflicted with, to which allusion has been made during the trial." Exceptions were duly taken by the defendant to these rulings, and to all the other rulings of the justice adverse to him.

We think the justice erred in these rulings. The defendant was not bound to board the plaintiff at his house while the plaintiff was affected with said disease, although the defendant had previously agreed to board the plaintiff. The plaintiff practiced a fraud upon the defendant, when he procured from the defendant such an agreement without first disclosing to the defendant his own condition as to health. The plaintiff testified on the trial, among other things as follows: "Defendant was to furnish team and seed and farming utensils, *and board me* at his house." The

defendant testified on the trial among other things as follows: "I also agreed to board him [the plaintiff] at my house." It was evidently the intention of the parties at the time of making the contract that the defendant should have the benefit of boarding the plaintiff at his own house; but even if it was not, still the defendant could not have hired the plaintiff's board at some other house for the same price that he could have hired the board of a person in good health and free from said infectious and loathsome disease. And therefore the plaintiff had no right, while so diseased, to demand his board from the defendant under any circumstances. Plaintiff further testified: "Defendant said he did not want me to go on with work, and that he could not board me at his house any longer. Defendant never put me off the premises. He has never refused to let me work the farm." The defendant further testified: "I never turned him [the plaintiff] off the place, or refused to let him work it; but I did not want him to board or lodge at my house while he had the disease." It was also shown by the evidence that the defendant offered to furnish a man for the plaintiff, while the plaintiff was diseased, for sixteen dollars per month, and that the defendant would pay the man and take the amount out of the plaintiff's share of the crops, but the plaintiff refused, and said he was not able to hire a man. It was also shown that the defendant offered to pay the plaintiff for what he had done on the premises, provided the plaintiff would give up the lease, but the plaintiff refused. And then, as we have before stated, the defendant refused to board the plaintiff any longer at his house, and the plaintiff left the premises and then commenced this action. During the trial the plaintiff, for the purpose of showing his damages, proved that there were seventy-two acres of arable land on the premises; that the annual rental value thereof was from $2.50 to $3 per acre; and that board at a farm-house was worth three dollars per week. The plaintiff's loss was in fact his board for one year, and one-third of the crops raised on said 72 acres of

land; or, in other words, one-third of the use of said 72 acres for one year. But he gained the labor that he would have had to bestow on said land. Now in our opinion, from the evidence, the plaintiff was not entitled to recover anything. He was not entitled to recover for the use of the land, or for one-third of the crops, for the reason that the defendant never refused to let him cultivate the land. And he was not entitled to recover for board, for the plaintiff had a reasonable and legal excuse under the circumstances for refusing to board him any longer. Or in other words, the defense the defendant set up and offered to prove was a good one, and the justice erred in excluding it. The jury rendered a verdict for the plaintiff and against the defendant for $30. How much of this verdict was for board, and how much of it was for the use of the land, we do not know, and cannot tell. It may have all been for board. It may have been the value of the board for a year with something deducted for the value of the plaintiff's labor. Or it may have been for the sum of the board and the plaintiff's share of the crops, with the value of his labor deducted. After the verdict was rendered the defendant moved for a new trial for various reasons. The justice overruled the motion, and then on said 16th of September rendered judgment in favor of the plaintiff and against the defendant for $30 and costs. The defendant then took the case to the district court on petition in error. The district court affirmed the judgment of the justice. In this we think the district court erred, for the reasons already given. After said judgment was affirmed in the district court, the defendant Douglas brought the case to this court on petition in error. There has been no appearance in this court on the part of the plaintiff McFadin, and hence we can only conjecture as to the grounds on which he may rely to sustain his judgment in the justice's court.

As both the justice of the peace and the district court, in our opinion, erred, the judgment of the district court must be reversed, and cause remanded, with the order that the

judgment of the justice of the peace be reversed, and for such further proceedings as may be proper in the case.

All the Justices concurring.